*38 Opinión disidente emitida, en etapa de reconsideración, por el
Juez Asociado Señor Rebollo López.
El extraordinario deterioro que sufre nuestra sociedad es aun mayor de lo que nos podemos imaginar. Entre otras cosas, la vida humana ha perdido todo su valor. Ello lo podemos palpar no sólo en los horrendos asesinatos que se cometen a diario en nuestra tierra, sino que en la actitud de displicencia y desidia que observan un por ciento de los profesionales de la salud al desempeñar la profesión que escogieron para servirle a la humanidad y ganarse la vida.
En lo pertinente al caso que ocupa nuestra atención, todavía recordamos la actitud y conducta que observaban los obstetras en tiempos pasados. En primer término, la intervención quirúrgica, o cesárea, era la excepción a la regla general del parto natural. Hoy, nuestra Isla se distin-gue por ser uno de los lugares en el Mundo en que, propor-cionalmente, se llevan a cabo un número considerable de cesáreas. Las razones —que se comentan en voz baja— son harto conocidas: al obstetra se le paga más por una cesárea que por un parto natural y ésta le permite a este profesio-nal de la salud trabajar en forma más cómoda, ya que dichas intervenciones se programan para llevarlas a cabo durante el día. Dicho de otra manera, ya prácticamente los niños no nacen de noche en Puerto Rico.
Todavía vive en nuestro recuerdo aquel obstetra, o par-tero, que una vez notificado de la proximidad del parto, acudía inmediatamente al hospital correspondiente —ins-titución que éste no abandonaba hasta que nacía la criatu-ra— e, incluso, pasaba la noche junto a su paciente en espera del alumbramiento. ¡Qué tiempos aquellos! Hoy, época en que, curiosamente, existen más especialistas en obstetricia que antes, por lo que el número de pacientes que atienden no es tan numeroso, el obstetra no acude al hospital designado hasta prácticamente el último mo- *39 mentó antes de que se produzca el parto. Entretanto, se dedica a comunicarse por la vía telefónica con una enfer-mera, quien le da su opinión e interpretación, según su limitado conocimiento y entrenamiento, de lo que le está sucediendo a su paciente y a la criatura que ésta lleva en su vientre.
Esta es la peligrosa y trágica situación que describen, y surge de, los hechos del caso ante nuestra consideración, los cuales describen detalladamente la actitud de displicencia —a la que nos referimos anteriormente— de parte de un preocupante porcentaje de los obstetras que practican su profesión en Puerto Rico; situación que este Tribunal ig-noró completamente en la Sentencia que emitió.
Por otro lado, el caso demuestra, igualmente, la práctica inaceptable de algunos hospitales en nuestra jurisdicción de no abrirle un expediente médico a una persona que acude allí y recibe tratamiento en dichos hospitales. Esta práctica tiene el resultado, inaceptable e indeseable, de que no se puede saber, a ciencia cierta y a posteriori, qué real-mente le sucedió al paciente en ese hospital.
Es correcto que hemos resuelto que un expediente mé-dico incompleto “ ‘no necesariamente constituye negligen-cia per se’ (Enfasis suprimido.) Blás v. Hosp. Guadalupe, 146 D.P.R. 267, 322 (1998). No debemos olvidar, sin embargo, que es “norma imperante en nuestra jurisdicción que los expedientes médicos tienen que llevarse de forma adecuada, de suerte que a la hora de examinar las actua-ciones médicas podamos conocer mejor la situación del pa-ciente a través de todo el tratamiento. Claro, las omisiones no necesariamente constituyen negligencia per se. Sin embargo, dicha omisión puede ser un factor a considerarse en la credibilidad del médico en cuanto al tratamiento brindado por éste”. Ramos, Escóbales v. García, González, 134 D.P.R. 969, 980 (1993). Ello, no obstante, en el presente caso no se trata de meras omisiones en el expediente médico. Se trata de la carencia absoluta de un expediente médico. ¿No *40 debe este Tribunal, como mínimo, considerar la posibilidad de modificar la norma antes mencionada?
Por último, el caso que ocupa nuestra atención nos pre-senta, igualmente, la inaceptable práctica de algunos hos-pitales de incumplir con el deber que tienen con el paciente que acude allí en busca de ayuda y atención médica ade-cuada para alguna condición seria que le aqueja: ser aten-dido y examinado por un facultativo médico y no por una enfermera o enfermero, independientemente de que se con-sulte por teléfono con el médico de cabecera del paciente. La demandante, en el presente caso —una madre próxima a dar a luz por tercera ocasión a una criatura que murió en su vientre dos días después y que entendía podía estar de parto— fue dada de alta del hospital codemandado sin ha-ber sido examinada por un facultativo médico. ¿Debemos avalar, sin más, dicho proceder?
Una mayoría de los integrantes de este Tribunal lamen-tablemente rehúsa cumplir con su deber —como máximo foro judicial del País— de establecer las normas básicas que deben regir la buena práctica de la medicina en nues-tra jurisdicción con relación a los tres aspectos previa-mente señalados. Al así no actuar, desatiende los reclamos de los ciudadanos que tocan a nuestras puertas en busca de justicia. (1)
Es por ello que disentimos.

 Debe quedar claro que el incumplimiento antes señalado no necesariamente implica que el resultado del caso deba ser distinto.